Good morning, Your Honors. I'm May Yang, attorney for Christine Nordgren, who is seated in the second row behind the counsel's table there, along with Mr. Mitchell R. Hadler, who is another attorney assisting in this case. Now, the appellant, Christine Nordgren, is here to address and seek assistance from you. She is seeking substantive relief for federal claims. These are civil and constitutional violations allegedly perpetrated by the appellees against her, which she did not pursue in the State court proceedings. Now, as the appeal issues have been fairly presented in the appellant's principle and reply brief, I want to touch on three main topics today. That is that, number one, there was a timely notice of appeal in this case. Number two, the federal government did not receive any legal assistance in this case, and that is a big issue in this case. The federal district court has subject matter jurisdiction, and the Rooker-Feldman doctrine does not apply in this case. And the appellant has brought plausible claims that withstand a Rule 12b motion to dismiss. Now, Federal Rule of Appellate Procedure 4 provides that a party who timely files a Federal Rule of Civil Procedure 59e motion which tolls the clock for a timely appeal, then the time to appeal, then the time to appeal, time to file appeal runs for all parties from the entry of the order disposing of the last such remaining motion. But the problem with that is, is if you read Judge Thunheim's order, Judge Thunheim was clear that this was an improper Rule 59e motion because it asked for amendment of the claim, which you can't do in a Rule 59, and it didn't comply with the local rules. So what do we do with the fact that it really wasn't? We looked at the substance. What do we do with the fact that it really wasn't a Rule 59? Well, Your Honor, I pointed out to the holding in the BCA v. United States case where the holding states that the substance of a motion rather than the form of a motion is controlling. And also in that case, it says that a motion questioning the correctness of a judgment is functionally a Rule 59e motion. But again, I think that Judge Thunheim, I mean, just on the plain language of his side of that, substance rules, I recall, and said, I think the substance of this is that it's an improper motion for reconsideration, not a Rule 59e. I would beg to differ, Your Honor. In his order, the Court brought up for the first time the general rule that a person has no claim for civil liability based on the Fifth Amendment's guarantee against self-incriminating statements unless the compelled statements were admitted against her in the criminal, in a criminal case. I addressed that squarely in the Rule 59 motion. In addition, the Court also brought up the argument that purportedly the plaintiff's Fifth Amendment rights had not been violated because she had not invoked her Fifth Amendment right, given that it's not self-executing. I also squarely addressed that. The rule, the function of a Rule 59e motion is to, is to correct manifest errors of law and fact, which is what I, which is what the appellant did in her motion, Rule 59e. Go ahead. Go ahead. Go ahead. Rule 60B, I just want to, I want to ask whether or not you covered the Rule 60B. I didn't see you. That's the other option for a tolling motion. I don't hear you saying that it's a Rule 60B. I didn't see you arguing it was a Rule 60B. This seems to be all about Rule 59. Am I right? Correct. Okay. What relief did you seek in Rule 50, in your Rule 59e motion? Excuse me, Rule 50, or did you say 59? I said 59e. What, what relief did I seek? Well, I addressed the manifest errors that the court had issued in that, in its order, and so I sought to, again, correct those errors, and that is the proper substance to bring, to bring a Rule 59e. Did you seek to amend your complaint? I sought to amend, I sought to amend the judgment of the, that was issued on September 1st, 2021. Thank you. Okay. The second issue that, that I want to address today is the fact that the federal court does have subject matter jurisdiction and the Rooker-Feldman doctrine does not apply. Now, there must be a twofold inquiry to determine whether the Rooker-Feldman doctrine applies in the case. Number one, you have to inquire whether the federal plaintiff seeks to overturn or set aside the state court judgment. And number two, whether the federal plaintiff presents an independent claim. Now, prior to the Exxon Mobil Corporation v. Saudi Basic Industries Corp. case, the inquiry was limited to the first prong, meaning whether the plaintiff had sought to overturn the state court judgment. However, the Exxon case has expanded the inquiry to include a second prong, which is to analyze whether the plaintiff sought an independent claim. Now, an independent claim also analyzes whether the, whether the plaintiff sought, whether the plaintiff sought different remedy or relief. Now, in the case, we cited to the Geelan case, which says that, which holds that the Rooker-Feldman only applies when the state court considers and rejects federal claims on their merits. Now, can I ask you about the termination of parental rights order itself? I do think there's some different things going on here. You might be right about the Rooker-Feldman. To the extent, are you, are you challenging the termination of parental rights order at all in federal court? No, Your Honor, we're not. We're not asking to have the children, we're not asking for her to regain custody of the children, no. We're asking to vindicate her civil and constitutional federal rights. And so what, what remedy are you asking for? Are you asking for money damages, then? Correct. Correct. But not, but not injunctive relief of any kind? No. Okay. Okay. Now, now, again, okay, I, I believe that, that I've addressed that, that again, she's seeking independent claims, that she's not seeking to overturn the court judgment. I, I, I do want to add that the NC case points out that a plaintiff cannot seek a claim for civil liability based on the Fifth Amendment, as there was no self-incriminating statements used against her in criminal law. So even if an argument could be made that she presented constitutional, constitutional claims in the state court, NC court, at the NC case states that she could not have. In addition, she had no opportunity to be heard. It's, we've made it clear that she, her counsel did not provide her or prize her or inform her that her Fifth Amendment rights were violated. We've also made it clear that she was not aware until January 2018 that her cons, her Fifth, Fifth Amendment rights were violated. And so she could have not timely appealed the October 2017 order for, for the termination of her parental rights any time prior to when she filed her motion, her motion to vacate the, the termination orders. What specifically was she asked to say or do that would violate her Fifth Amendment rights? Well, under, under the, under state, state law, she, her Fifth Amendment right was violated under the penalty, penalty clause in the Fifth Amendment, penalty exceptions under the Fifth Amendment jurisprudence, where it says that if the court, if the state compels her to violate her Fifth Amendment rights or make self-imprinting statements against her will, where they impose a potent sanction, and in this case, they, they stated that unless she confessed to allegations of abuse, she would never see her children again. So in that instance, although she never made any self-incriminating statements, under, under that penalty exception, the court, the state did violate her Fifth Amendment, Amendment rights. Well, I thought that what the state was asking her to do was to engage in counseling, which would include an apology, but I do not understand that they said she had to admit to child abuse. Where, where do we find that in the record, that they, they compelled child abuse? Well, Your Honor, I, in, in her First Amendment, excuse me, in her first amended complaint, I do, we do include in there the partial transcripts from the court proceedings in which the appellee social worker, Libra, excuse me, the, the, the Nystrom therapist, Rochelle Anderson, clearly states that the appellee social worker, Libra, induced her, directed her to have Nordgren admit to child abuse. It's very clear. And, and, and, and the transcripts. That's merely an allegation. The question is, at this stage of the proceedings, the question I've got is, is, is there anything supporting it in the record at all? I mean, as, you know, we have included, that, that, that will bear out in, in the evidence to, to come, but we stated in the, in our oral argument before the district court that she will testify to the fact that for 11, for approximately 11 weeks when she was in counseling with the therapist, Rochelle Anderson, that she interrogated her week after week, attempting to force her to, to confess to child abuse. So it is in the record. She's also made, we, I believe that. All right. So you've got a situation where she never actually invoked the privilege, right? Correct. And there's no allegation that she did. And you've got an allegation that she was told she had to confess, right? Correct. But I believe under the, under the, under the procedural posture in, in, excuse me, in, in responding to a motion 12B, the court has to accept the factual allegations as true. So we are, we are alleging that this is what occurred, that she was forced to admit to child abuse. And the fact that she didn't, the, the court was complying with the state-ordered case plan. And one of the objectives was to participate in family therapy. And the, the, it's our allegation that they thwarted that possibility by not allowing her to do so unless she confessed to allegations of abuse, which she, she didn't do. The, the orders that were attached as the append, the, the exhibits talk about undergoing a psychological evaluation, parenting assessment, cooperating with sort of reunification with the family counseling and therapy, right? Correct. Okay. Those are before the court and we can consider that? I'm, I'm sorry, I'm not. Those are before the court and we may consider those, right? Because they're, they're, they were attached, right? Right. You, you, you, you certainly can, Your Honor. I just want to point out to the fact that I believe in the First Amendment, First Amendment complaint at paragraph seven, excuse me, paragraph 70, we do allege that the, the appellee, the social worker, Libra, she conceded to the district court that Ms. Nordgren had substantially complied with all stated objectives of the case plan except for one. And the one being that she did not participate in family therapy. It's our allegation that but for the actions of the appellee, they thwarted her ability to participate in that state, that objective, thus ultimately depriving her of her fundamental rights to maintain her family. So that, so apart from that, she complied. It's, it's at, I believe, paragraph 70 of the First Amendment, excuse me, the First Amendment complaint that she had substantially complied with every object, stated objective but one. Could I ask one, one additional question? You may. So I want to get back to Judge Malloy's point because it's extremely important, which is, if she, would you agree that if they said to her, please apologize to your kid for your behavior, that that would not be incriminating? So if she said, I apologize for my behavior. But if she says, I apologize because I abused you, you know, I physically or mentally or emotionally abused you, I think you're suggesting that it's the latter, not the former, correct? Correct. Okay. And that's a different case. Okay. I just wanted to be sure of what we were doing. Because actually in the record, it's not all that clear. When you look at the determination of parental rights order itself and stuff, it's not clear what they actually asked her to do. Correct. And as we pointed out that, and as the, as the district court pointed out, these references were not explicit. So there was no, and that's why we say that she never, the appellant never had the real opportunity to submit this argument before the court, that there was a potent sanction before her. She didn't, we've argued that she did not, she is not well-versed in the law. She has a high school diploma. So she did not, she was not aware of her Fifth Amendment rights. So when she was interrogated week after week, she did not know that that was a violation of her Fifth Amendment rights. And so that goes to our argument. But I'm Let me, can I ask a question? You may. But you started out by saying she never said anything incriminating. So what difference does it make whether she was not speaking because of her Fifth Amendment rights or she was not speaking for some totally unrelated reason, she still didn't incriminate herself? Well, Your Honor, I did go, I did present earlier the fact that we have this penalty exception where she doesn't have to make one self-incriminating statement at all, but the Fifth Amendment right is, the Fifth Amendment is breached when you have the state coercing a person, as in the case we allege, that week after week, you have to confess to child abuse before you can have the right to participate in family therapy to obtain or regain custody of your kids back. And if you don't, you're never going to get that chance. That is a violation of the Fifth Amendment right. Regardless, regardless of this argument, we can bring it under the 14th Amendment, which is her substantive and procedure due process rights, you know, under the 1983, under color of state law where they've violated her, they stripped her of her fundamental right to maintain her family. And so they've utilized these illegal tactics. We've alleged that the social worker has no authority under state law to direct a third-party agency, third party, such as the Nystrom practitioners, to direct her to get a forced confession before she participates in family therapy. Okay. I understand. Thank you. I have one question. When did you first assert the penalty exception? Your Honor, the district court, in its order, on the defendant's motions to dismiss, for the first time brought it up. The appellees never brought it up. So it was brought up and we challenged that in our motion to, in our Rule 59e motion. That was when it was brought up. Is that sufficient, in your opinion, to preserve the issue on appeal? Well, I would say that it was not brought up to our attention and none of the appellees brought it up. So the fact that the court did address it in its order and we did respond to it and challenge it on the rule, on the Rule 59e motion, I would believe that we did preserve it. Isn't, just to follow up, isn't that, isn't the penalty exception something you have to bring up? It's your claim for relief. It's your, I mean, you're saying it violated the self-incrimination clause. Why would they bring up something that helps your client? Well, because, I guess, if the argument was never brought up that she would have to invoke it, clearly, clearly, she didn't, clearly in this case, she didn't, she did not have to invoke her. There are two parts to this argument. The first is that she has to, in order for her to make a claim of a Fifth Amendment right, she has to invoke it. However, under the penalty exception, she doesn't have to do it. We're, there's sufficient, a wide breadth of case law in the Minnesota case law that says she doesn't have to do it. We don't have to assert that she would have to invoke it if the case law says that if the state is wielding this potent sanction that you're going to be stripped of your rights to maintain your family. So, let me get this right, though. Your argument is that you don't have to assert it when you assert the privilege, right, which actually was never asserted here at any point while the proceeding was still going on. But second, that any time that a United States District Court at any point just says, hey, you know, the plaintiff never raised X, but even if they have, X is a loser, that now all of a sudden you've resurrected X so that X can be your primary argument on appeal. I don't quite understand your question, Your Honor. Can you rephrase it? Well, ordinarily, we say that in order to preserve an issue, you have to raise it. But district courts oftentimes write opinions that say the plaintiff raised Issue 1 and Issue 2. Now, they've never raised 3, but if they had raised 3, it would still fail. Okay? Does that make Issue 3 a viable issue on appeal, in your opinion? Your Honor, again, as I indicated, the – her Fifth Amendment violation is – her civil and constitutional claims does not rise or fall on her Fifth Amendment rights being violated. She also has a fundamental right to have her family intact. Now, we can argue that under – under the underlying actions here to coerce her to violate her Fifth Amendment rights, we're part and parcel in stripping those rights. But she has claims under the substantive due process as well as the procedural due process rights, which is that these are not legitimate – excuse me – these are not legitimate justification to advance a government – a government objective, which is to – Which is ultimately reunification of the family. I understand. Very good. Thank you very much. I appreciate your argument. Ms. Harmon, when you're ready. May it please the Court, my name is Shannon Harmon with the Hennepin County Attorney's Office. I represent the Hennepin County defendants' appellees in this matter. Appellate's counsel just told you that she has a fundamental right to have her family intact. She also indicated that but for the actions of appellants, she would be – she was deprived of her parental rights. And she made that clear, that that's the point of her case. And that's important here, Your Honors. Between 2011 and 2015, Hennepin County received numerous reports that appellant was harming her children, and Hennepin County intervened. Ultimately, on October 23, 2017, the State District Court issued a TPR order terminating appellant's parental rights. This order was a 45-page order explaining in detail the Court's numerous reasons for terminating appellant's parental rights. The order came following a 7-day hearing conducted by counsel, who objected regarding the Fifth Amendment, and in which the Fifth Amendment was addressed by the State Court judge. This very argument, Your Honors. Appellant went on to make numerous untimely challenges to the State order at all levels of State court. And unhappy with those results, appellant now wants the Federal Court to cure her alleged harms. And what are her alleged harms, Your Honors? She has told you numerous times today, is that but for the actions of the appellees, she would have her children, her rights, her parental rights would not have been terminated. Hennepin County appellees challenge this appeal on three primary bases today. First, this appeal is untimely. Second, the Rooker-Feldman doctrine bars Federal jurisdiction. And third, appellant has failed to state a judgment specifically as to the Fifth Amendment as determined by the District Court. As to untimeliness, last week this Court asked the parties to be prepared to talk about whether the notice of appeal is untimely or is timely. It is not, Your Honors. As the Court knows, and so this Court does not have jurisdiction. As the Court knows, a party has 30 days from a final judgment or order to appeal. The judgment in this case is dated September 1st, 2021. The notice of appeal is dated April 29th, 2022. It's far beyond the 30 days. Let's get to the meat of the issue, which is you heard counsel say that Rule 60B is not on the table. That would have been another way to toll this. But she said, no, this was not a Rule 60B motion. But she does say pretty strenuously, or argue pretty strenuously, this was a proper Rule 59. And a Rule 59e motion does toll as well. So tell me why this wasn't a Rule 59. That's right, Your Honor. Ultimately, a Rule 59e motion, a motion to amend or alter judgment, requires that the motion be based on either new evidence, new arguments that the party could not have known about, things that couldn't have been brought up before. Yet, if you look at this particular motion, Your Honor, it is styled as a Rule 50e motion, titled a Rule 50e motion. But as Judge Thunheim found and explained thoroughly, this was not based, the motion was not based on any new evidence or new arguments. In fact, in numerous places in the motion, Appellant pointed to spots in her prior briefs where she had already made arguments. She went so far as to do that, and Judge Thunheim pointed that out as a key hint that this was not a Rule 59 motion. That's fair. What about the motion to amend the complaint? There's a footnote in his order where he says, you know, this looks like another improper way to amend the complaint. You heard opposing counsel say, no, I wasn't trying to do that here or I didn't do that here. What is your view of the motion? Was she trying to amend the complaint again in that Rule 59 motion? I believe that she has tried to amend the complaint in nearly every filing that she's made. So I think she has, every time you point something out that's wrong with a claim, she asks, oh, well, can I amend and add this person and do this? So in essence, maybe she was trying, but she didn't do it properly, and Judge Thunheim made that clear. And she's not doing it properly here by asking to be able to amend the complaint. And I will note that one of the reasons why the rules require seeking leave to make a motion to amend a complaint is because you need to be able to redline your complaint and show the other parties what you're actually asking to be changed. We are still guessing here. Again, and, Your Honors, again, this was in substance a motion to reconsider, and Judge Thunheim found that the substance of the motion in substance won the day here, and that, in fact, this was not a tolling motion. This was a motion to reconsider. One last question. Procedurally on appeal, I looked at the docket on this. You filed a motion to dismiss. An administrative panel of this Court dealt with it. But my understanding is procedurally, none of the briefs, or at least your brief, had not been filed at the time of the motion to dismiss. Was this pre-briefing for Hennepin County, or had you already filed your appellee's brief? I'm sorry. At the time that we filed our motion to dismiss. Your motion to dismiss. Had you engaged in briefing yet, or was this pre-briefing? I don't believe so, Your Honor. Okay. And that's why we are raising it again, is because it appeared that it wasn't addressed substantively, and it appeared that perhaps the Court wanted to allow the parties to address the substantive arguments. Thank you. And the motion to reconsider also was not pursuant, filed properly pursuant to Local Rule 7.1, and Minnesota District Court has found that that makes it a nullity, as if the motion didn't exist. So it certainly couldn't then toll. And the District Court's 415.22 order denying the motion for reconsideration also cannot toll the deadline. Your Honors, my time is running short here before I will defer to my co-defendants, but I want to mention the Rooker-Feldman Doctrine. The Rooker-Feldman Doctrine, if the Court finds that this was a timely appeal, the Rooker-Feldman Doctrine precludes jurisdiction. The District Court limited its holding on Rooker-Feldman, dividing between the TPR order itself and the things that happened in therapy. But as a appellant has told you today very clearly, the basis of all of her claims is that her parental rights were wrongfully terminated. The relief sought is, in fact, invalidation of the State Court decision. I know she told you today that that is not what she is seeking, but in order to grant her the relief that she is seeking, this Court needs to find that it would need to invalidate not only the State Court decision, the District Court's decision, but the Court of Appeals and the Minnesota Supreme Court, and hold that her parental rights should not have been terminated, because that is her ultimate claim. Finally, as to... Is that really her ultimate claim? I've just got to challenge you on this, because I think if she were challenging the TPR, you'd be absolutely right. You cannot appeal that to the District Court. But here I think she's saying, no, what the problem was is I was either, I was forced to choose between my kids and self-incrimination. And I think that's a claim that survives the Rooker-Feldman Doctrine, because she's saying, I had independent harm from that. I'm not trying to get my kids back. But by being forced to make this sort of Hobson's choice, that's the harm. For two reasons, Your Honor, that does not save her under Rooker-Feldman. Rooker-Feldman addresses both direct and indirect challenges to State orders. While she will stand, has stood up here and said she doesn't want the order validated, she's not asking for her kids back, in order to award her anything, the Court's going to have to find that that order was wrong, that she should not have lost her kids, that she would not have lost her kids but for allegedly being asked to admit to harming her children. But as Judge Moore at the State District Court addressed this, so that is another reason why Rooker-Feldman applies, is because you not only would have to invalidate the termination of the parental rights, but one of the key, or one of the reasons addressed by the Court, she raised the Fifth Amendment argument at the State District. Just to, can I ask one more question? You may. This is an important part of Saudi basic. Are we really talking about collateral estoppel or res judicata here? What the Court said is the time that Rooker, the Supreme Court, the time that Rooker-Feldman does not apply is when ordinary collateral estoppel or res judicata applies. And it seems to me you're arguing she raised it before she lost it, she can't raise it again here. And that's not a Rooker-Feldman issue. Your Honor, I haven't honestly thought of the collateral estoppel argument. Yes, she mentioned it there. I'm not sure if that's a collateral estoppel. It could be. That could be another reason. But I really do think she's ultimately asking the Federal Court to review directly or indirectly. And she's saying today basically indirectly, review a State court decision to terminate her parental rights. Because she's saying they wouldn't have been terminated but for these alleged requests to admit something. But there were a variety of other reasons that the Court gave. All right. Thank you very much. Ms. Nierengarten. Good morning, Your Honor. My name is Julian Nierengarten. I'm here on behalf of Appellee's, Nystrom & Associates, Rochelle Anderson and Suzanne Vinge. I only have a few minutes with you today, so I want to quickly address two issues that apply specifically to the Nystrom defendants and to Defendant Craig Rice. The first is that Appellant has waived any argument that the District Court wrongfully dismissed her Federal claims against Nystrom and Rice by not raising the issue in her opening brief. And this is ‑‑ I want to be really clear about this. The operative complaint in this matter is the first amended complaint. And that's the pleading on which the District Court based its dismissal. Appellant never moved to amend the complaint. She asked in briefing repeatedly, but, you know, as the case law we've cited in our brief tells us, asking in a brief is not sufficient. You have to bring the motion. You have to provide the proposed amended complaint for the exact reasons that Ms. Harmon noted earlier to be able to tell what the new claims or new allegations are. In her opening brief, Appellant spends less than four pages arguing that the District Court made the wrong decision on the actual record before it, and spends the bulk of her briefing arguing that she should have been permitted to amend her complaint despite not having moved to do so. In that four pages of argument, she only argues that the District Court wrongfully dismissed her Fourteenth Amendment due process claims under Section 1985 against the county defendants, and never argues that it wrongfully dismissed her Section 1983 claims against Nystrom and Rice. And that, therefore, waives any argument on appeal that we were wrongfully dismissed from this action. The second issue I want to raise with you today is that if the Court is inclined to consider whether she properly pleaded that Section 85 claim, she has not actually pleaded sufficient allegations to, for that claim to withstand a Rule 12 motion. She would need to, she would have needed to have alleged that more than one party reached an agreement to conspire based on some class-based discriminatory animus for the purpose of depriving her of equal protection, and that at least one of these conspirators acted in furtherance of that conspiracy, and she was thus injured or deprived of a constitutional right. Absent a constitutional violation, there is no actionable conspiracy. As we've talked about, or you've talked about with the other attorneys who have presented so far, extensively, there's no constitutional violation here. She never invoked the Fifth Amendment. She never incriminated herself. She was never charged for any actions she admitted to. The penalty exception, as Your Honor noted, is not a viable argument for her on appeal. And even if it were a viable argument, she, it doesn't apply in this case. I note that my time is up. If the Court has any questions, I'm happy to answer. Otherwise, I will proceed to my question. Thank you very much. Rachel Beauchamp. Good morning. My name is Rachel Beauchamp. I represent Appellee Craig Rice, and I am here on behalf of law firm Cousin-O-Malone. Mr. Rice is in a substantially different position than literally anyone else in this lawsuit. He never met Ms. Nordgren, never treated Ms. Nordgren, never had any contact with Ms. Nordgren, never spoke with Ms. Nordgren. His sole relationship to this litigation at all is that he was the appointed therapist for her children, completely separate from her. He was a witness solely as to his role as the children's therapist. So even if there was some sort of conspiracy, which there was not, he is way over here, and there's nothing in the fact that even brings him in with the rest of this. Regardless of that, he's in the case. We have the arguments. We brought our motion to dismiss. The first point I'd like to hit is that any request to amend her complaint, however framed during this process, was procedurally improper in every different way. It didn't follow the rules. It never provided a copy of any specific amended complaint. It literally never even stated in any briefing or oral argument a specific, articulable, revised allegation of any kind. It was simply endless, I will, if you do this, do this. So it never happened. It never moved to. It didn't happen. It can't be before the court. Judge Thunheim properly dismissed it, sorry, properly denied it, and then even moved on to the merits and found it futile. I would like to take one minute to address the moral and legal issues with a formerly TPR'd parent attempting to stand as next friend to children who have been removed for their protection and placed with a new family for their permanency and the importance of their growth and best interests. Any decision that would ever allow such a position would interfere with state courts' jurisdiction over family matters, and it would be improper from both a moral and a legal standpoint to allow someone to reintroduce themselves to the lives of children who have been placed in a new family for their own protection. You know, I used to be a state court judge, and you heard what she said. She said very clearly, I am not looking for that. We have a clear concession today. I'm not looking to be reunited with my children. All I want is damages for, you know, for what happened to me at the state court. That seems to me to not present any of the issues you're raising. And, Your Honor, I guess I would disagree that that's what she's claiming because she's asked to stand as next friend and bring claims on behalf of those children, a position that's only allowable for someone who is acting as and for those actual individuals. Regardless of what she says about money damages, every aspect of this case is about getting back to those children. And the claim for next friend was raised when my client raised the fact that she has no standing to speak for or on behalf of those children anymore. And she promptly changed and said, oh, I'm not bringing the claims for myself or them. I'm bringing them for my former children. She is asking this court for that exact kind of contact and has stated that in her reply brief where she stated they have an ongoing, lasting connection. And I'm not here to dispute that. I have two children adopted through foster care. A biological parent has that. But legally, there's no basis for that.  Very good. Thank you. Thank you. Ms. Anderson. Good morning, Your Honors. Emily Anderson, Assistant Attorney General on behalf of Jody Harpstead, the Commissioner of Human Services. As you've heard today, the Commissioner is sued solely in her official capacity in this case. And as we've talked about at length, Ms. Nordgren seeks only damages in her prayer for relief. So the Commissioner is entitled to sovereign immunity. Ms. Nordgren has not actually challenged that legal fact at any point in this case. So the Commissioner was correctly dismissed from this case. The only question that involves the Commissioner at all that remains, then, is this complaint amendment issue. As my friends have already said today, Ms. Nordgren never made that motion. She never made a procedurally proper motion. And as you've heard today, the Commissioner was not involved in the child protection matter at all in any case. So any amendment to add her in her individual capacity would be futile in any case. The judgment of the District Court as to the Commissioner should be affirmed in its entirety. Thank you. Mike, do you have any questions for Ms. Yang? I'm fine. The matter has been fully briefed and argued. You have not reserved any time for rebuttal. We'll go ahead and take the case under advisement. Thank you very much.